IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAUREEN LEBEAU, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL W. RAITH et al., | : | No. 17-38 |
| *Defendants*. | : | |

PRATTER, J.                                                                                                                  MAY 23, 2017

**MEMORANDUM**

Maureen LeBeau brings this action against (i) Delaware County Adult Probation and Parole ("DCAPP"), Leanne Montgomery, Michael Raith, Danielle Hibberd, and Christine Katch (the "Probation Defendants"), and (ii) Community Education Centers, Inc. ("CEC"), George W. Hill Correctional Facility ("GWHCF"),[1] James Mattera, and Ms. Cummings (the "Prison Defendants"). Ms. LeBeau alleges violations of federal and state law arising out of her arrest and detention in connection with a bench warrant. Ms. LeBeau alleges that the bench warrant was issued because Ms. Montgomery improperly reported that Ms. LeBeau was not in compliance with the conditions of her probation. Ms. LeBeau asserts (i) Fourth, Eighth, and Fourteenth Amendment claims against all defendants, (ii) a *Monell* claim against DCAPP and CEC, (iii) a state law claim for false imprisonment against all defendants, (iv) a state law claim for false arrest against the Probation Defendants, (v) a state law claim for negligence against the Prison Defendants, and (vi) a state law claim for intentional infliction of emotional distress against the Prison Defendants. The Probation and Prison Defendants moved to dismiss the

---

[1] GWHCF is a private prison owned and operated by CEC.

1

claims against them. For the reasons that follow, the Probation Defendants' motion is granted in part and denied in part and the Prison Defendants' motion is granted in its entirety.

I.    **ALLEGATIONS IN THE COMPLAINT**

Ms. LeBeau entered into a guilty plea in August 2013 in connection with a DUI charge. A condition of Ms. LeBeau's guilty plea was to complete a drug and alcohol counseling evaluation. While Ms. LeBeau completed the evaluation and submitted the certificate of completion in a timely manner to Ms. Montgomery, her probation officer, Ms. Montgomery purposefully failed to record Ms. LeBeau's completion of the drug and alcohol counseling evaluation. Ms. Montgomery then "wrongly and with malice reported . . . that [Ms. LeBeau] was out of compliance with the conditions of her probation." Compl. ¶ 24 (Doc. No. 1). This resulted in a bench warrant being issued for Ms. LeBeau's arrest. Ms. LeBeau was not aware of the bench warrant's existence.

On January 15, 2015, Ms. LeBeau was arrested in Delaware County during a routine traffic stop as a result of the outstanding bench warrant. Following the arrest, Ms. LeBeau was taken into custody on a 72-hour warrant and detained at GWHCF. Ms. LeBeau was not permitted a phone call,[2] allowed any visitors, or given the opportunity to speak with a judge. Prison personnel did not inform Ms. LeBeau that an outstanding bench warrant was the basis for her arrest and detention until after Ms. LeBeau had already been detained for several days. Ms. LeBeau repeatedly complained to prison personnel that her detention was in error, but prison personnel took no immediate action to investigate Ms. LeBeau's complaints. Ms. LeBeau was only able to speak with a case manager after "many days" of complaints. After speaking with a

---

[2] Ms. LeBeau was ultimately permitted to call her son to inform him where she was being held. The complaint does not specify how many hours or days passed before she was allowed this phone call.

case manager, Ms. LeBeau was permitted to call her probation officer.[3] Ms. LeBeau was released after speaking with her probation officer. Ms. LeBeau's detention lasted for 8 days.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes testing the legal sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

To decide a Rule 12(b)(6) motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court may also consider documents that are "integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.

---
[3] While the complaint does not state that this probation officer was Ms. Montgomery, the complaint elsewhere identifies Ms. Montgomery as Ms. LeBeau's probation officer. *See* Compl. ¶ 22.

1997) (citation omitted). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). Likewise, the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

Additionally, a district court can grant a motion to dismiss pursuant to Rule 12(b)(1) based on the legal insufficiency of the claim. *Kalick v. United States*, 604 F. App'x. 108, 111 (3d Cir. 2015). In moving to dismiss a claim pursuant to Rule 12(b)(1), a party may challenge a court's jurisdiction either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *Endl v. New Jersey*, 5 F. Supp. 3d 689, 695-96 (D.N.J. 2014). Dismissal under a facial challenge is proper "only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction . . . or is wholly insubstantial and frivolous." *Medtronic Vascular, Inc. v. Boston Sci. Corp*, 348 F. Supp. 2d 316, 321 (D. Del. 2004) (internal quotation marks omitted). In this circumstance, a court must accept as true all of the allegations contained in the complaint. *Id.*

Where subject matter jurisdiction "in fact" is challenged, the trial court's very power to hear the case is at issue, and the court is therefore "free to weigh the evidence and satisfy itself as to the power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In such an attack pursuant to Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Where a defendant attacks

a court's factual basis for exercising subject matter jurisdiction, the plaintiff must meet the burden of proving that jurisdiction is appropriate. *Id.*

### III. DISCUSSION

#### A. Claims Against DCAPP

Ms. LeBeau's claims against DCAPP fail on Eleventh Amendment immunity grounds. The Eleventh Amendment prohibits suits against states and state agencies and departments. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Non-consenting states are immune from suit both from their own citizens and citizens of other states. *Emps. of Dep't of Public Health & Welfare, Mo. v. Dep't of Public Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973). Probation and parole departments are state entities for Eleventh Amendment immunity purposes. *Haybarger v. Lawrence Cty. Adult Probation & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

Eleventh Amendment immunity "deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). There are three primary exceptions to Eleventh Amendment immunity: (i) congressional abrogation, (ii) waiver by the state, and (iii) suits against individual state officials for prospective injunctive and declaratory relief. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). None of these exceptions are applicable here.

First, § 1983 does not abrogate states' Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 76 (1989); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Second, Pennsylvania has not waived its right to rely on Eleventh Amendment immunity. *See* 1 Pa.C.S. 2310; 42 Pa.C.S. 8522(b). Last, this suit does not seek prospective injunctive and declaratory relief. Accordingly, the Court must dismiss with prejudice all claims against DCAPP

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Ward v. Pa.*, No. 14-17, 2014 WL 4682067, at *4 (E.D. Pa. Sept. 22, 2014) (dismissing federal law claims against DCAPP on Eleventh Immunity grounds for lack of subject matter jurisdiction).

### B. Official Capacity Claims Against the Individual Probation Defendants

Eleventh Amendment immunity extends to official capacity suits for damages against probation and parole department employees. *J.C. v. Ford*, --- F. App'x ---, 2016 WL 7422700, at *1 (3d Cir. Dec. 23, 2016); *see also* 1 Pa.C.S. 2310. Accordingly, the Court must dismiss with prejudice all official capacity claims against Defendants Raith, Hibberd, Katch, and Montgomery for the reasons stated above.

### C. Section 1983 Claims Against the Individual Defendants in their Individual Capacities

Section 1983 affords individuals with a remedy when state actors violate their federally protected rights. *See Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). In order to make out a cognizable § 1983 claim, a plaintiff must establish "that a person acting under color of law deprived him of a federal right." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). In order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* Ms. LeBeau argues that Ms. Montgomery caused her unconstitutional arrest and detention by improperly reporting that Ms. LeBeau was not in compliance with her guilty plea agreement. The complaint does not contain any allegations that are specific to Defendants Raith, Hibberd, Katch, Cummings, or Mattera.

6

1. <u>Claims Against Ms. Montgomery</u>

   a. *Fourth Amendment False Arrest/Imprisonment Claim*

Section 1983 claims for false arrest implicate the Fourth Amendment's guarantee against unreasonable searches and seizures. *Berg*, 219 F.3d at 269. A § 1983 false imprisonment claim similarly implicates the Fourth Amendment when it "is based on an arrest made without probable cause." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Accordingly, the Court will interpret Ms. LeBeau's § 1983 false arrest and imprisonment claims against Ms. Montgomery as arising under the Fourth Amendment.

To prevail on a Fourth Amendment false arrest claim, a plaintiff must demonstrate that he or she was arrested without probable cause. *Berg*, 219 F.3d at 269. A warrant issued without proper justification cannot provide probable cause for an arrest. *Id.* at 269-70. A government official that causes an individual's arrest without probable cause is as liable for a Fourth Amendment violation as the government official who carries out the arrest. *Id.* at 272. "It is thus clear that § 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Id.*

Ms. Montgomery argues that Ms. LeBeau has failed to state a viable Fourth Amendment claim against her because there is no allegation that Ms. Montgomery (i) actually arrested Ms. LeBeau, (ii) actually requested the bench warrant, or (iii) acted intentionally. Alternatively, Ms. Montgomery asserts that she is entitled to qualified immunity.

Reading the complaint in the light most favorable to Ms. LeBeau, the Court finds that Ms. LeBeau has stated a plausible Fourth Amendment claim against Ms. Montgomery for causing her unlawful arrest and detention. Ms. LeBeau alleges that (i) she submitted the drug and alcohol evaluation completion certificate to Ms. Montgomery in satisfaction of the requirements of her guilty plea agreement, (ii) Ms. Montgomery willfully refused to record

receipt of the certificate, (iii) Ms. Montgomery maliciously reported that Ms. LeBeau was not in compliance with the conditions of her probation, and (iv) Ms. Montgomery's actions caused her unlawful arrest and detention. These allegations are sufficient to survive a motion to dismiss. *See Johnson v. City of Phila.*, No. 13-2963, 2013 WL 4014565, at *4 (E.D. Pa. Aug. 7, 2013) (finding that an allegation that a police officer intentionally sought a bench warrant unsupported by probable cause adequately pleaded a Fourth Amendment violation); *Duffy v. Cty. of Bucks*, 7 F. Supp. 2d 569, 579 (E.D. Pa. 1998) (finding that a complaint alleging that a probation officer "intentionally sought the issuance of an arrest warrant" even though the probation officer knew the plaintiff was not in violation of his probation adequately stated a constitutional violation).

Ms. Montgomery is not protected by qualified immunity. To determine whether a government official is entitled to the benefits of qualified immunity, a court must consider "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was 'clearly established.'" *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has already determined that Ms. LeBeau adequately alleges that Ms. Montgomery's conduct violated the Fourth Amendment. It is also clear that Ms. LeBeau's right to be free from a government official causing her arrest and detention without probable cause was clearly established at the time in question. *See Berg*, 219 F.3d at 272. Accordingly, qualified immunity is not appropriate. *See Johnson*, 2013 WL 4014565, at *5 (denying qualified immunity on motion to dismiss where police officer was alleged to have intentionally sought a bench warrant unsupported by probable cause).

b. *Eighth Amendment Overdetention Claim*

Imprisonment beyond one's term of incarceration can serve as the basis for an Eighth Amendment claim. *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). Ms. LeBeau's

allegations, however, do not implicate the Eighth Amendment because there is no allegation that Ms. LeBeau was imprisoned beyond a court-sanctioned release date.

Eighth Amendment overdetention claims based on *Sample* must implicate an inmate's detention beyond the inmate's legally recognized release date. *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) ("An inmate's detention after his term of imprisonment can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth Amendment."); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and usual punishment."). Here, Ms. LeBeau was detained based on a probation violation. There is no allegation in the complaint that any defendant detained Ms. LeBeau for a period of time beyond a court-sanctioned release date. Courts generally undertake a due process analysis when faced with analogous factual scenarios. *See infra* Section III.C.1.c. Accordingly, Ms. LeBeau has not pleaded a viable Eighth Amendment claim against Ms. Montgomery.

c. *Fourteenth Amendment Procedural Due Process Claim*

The Fourteenth Amendment protects against state actors depriving individuals of their life, liberty, or property without due process of law. To state a plausible § 1983 procedural due process claim, a plaintiff must allege that (i) he or she was deprived of an interest protected by the Fourteenth Amendment, and (ii) the available procedures did not constitute due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

It has been clearly established for over four decades that parolees and probationers have a constitutionally protected liberty interest in remaining free to live their life outside the confines of prison walls. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that probationers have a liberty interest in remaining free on probation); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

(holding that parolees have a liberty interest in remaining free on parole). In order to comport with due process, a state must provide two distinct hearings after detaining an individual for a parole or probation violation. *Gagnon,* 411 U.S. at 782; *Morrissey*, 408 U.S. at 485-88; *Heilman v. T.W. Ponessa & Assocs.*, No. 08-1667, 2009 WL 82707, at *1 n.1 (3d Cir. Jan. 14, 2009). First is a preliminary hearing to determine whether or not there is probable cause for the revocation. *Gagnon,* 411 U.S. at 782; *Morrissey*, 408 U.S. at 485. Due process requires that this hearing occur "as promptly as convenient after [an] arrest" as possible. *Morrissey*, 408 U.S. at 485. Second is a final revocation hearing to determine whether or not the individual should remain detained. *Id.* at 487-88. The final revocation hearing must take place within a "reasonable time." *Id.* at 488. In the probation context, these hearings are referred to as *Gagnon I* and *Gagnon II* hearings.

The complaint contains no allegations connecting Ms. Montgomery to Ms. LeBeau's detention beyond 72 hours, the length of time for which she alleges the bench warrant authorized her detention. In fact, there is no allegation that Ms. Montgomery was even aware that Ms. LeBeau was arrested. The only arguable allegation with regard to Ms. Montgomery's knowledge of Ms. LeBeau's arrest and detention is that, after Ms. LeBeau was able to call her probation officer, that probation officer arranged for Ms. LeBeau's prompt release. Without an allegation that Ms. Montgomery was personally involved in Ms. LeBeau's alleged overdetention, Ms. LeBeau's procedural due process claim against Ms. Montgomery must fail.[4]

---

[4] Even if the complaint alleged personal involvement on behalf of Ms. Montgomery, or any other defendant, in connection with Ms. LeBeau's alleged overdetention, the Court is not convinced that Ms. LeBeau has a cognizable procedural due process claim. Ms. LeBeau was detained for 8 days. Pennsylvania law mandates that a *Gagnon I* hearing take place within 14 days of a probationer's detention. 37 Pa. Code. § 71.2(1)(ii). Ms. LeBeau did not bring any case law to the Court's attention suggesting that this timeframe does not comport with due process. The Court's own research showed that cases involving an 8-day or longer gap between detainment and a *Gagnon I* hearing made no mention that such a delay was problematic. *See,*

10

d. *Fourteenth Amendment Substantive Due Process Claim*

When constitutional claims are "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Here, the allegations against Ms. Montgomery are covered by the Fourth Amendment. *See Spiker v. Allegheny Cty. Bd. of Probation & Parole*, 920 F. Supp. 2d 580, 594 (W.D. Pa. 2013) (addressing false arrest/imprisonment-type claims under the Fourth Amendment and declining to address them under the rubric of substantive due process). Accordingly, Ms. LeBeau has not pleaded a viable substantive due process claim against Ms. Montgomery.

2. Claims Against Defendants Raith, Hibberd, Katch, Cummings, and Mattera

Ms. LeBeau has not pleaded viable § 1983 claims against Defendants Raith, Hibberd, Katch, Cummings, or Mattera because the complaint does not allege any personal involvement with respect to those defendants in connection with the alleged violations of Ms. LeBeau's constitutional rights. *See Rode*, 845 F.2d at 1207 (explaining that a plaintiff must demonstrate that an individual was personally involved in the alleged constitutional violations in order to sustain a § 1983 claim against an individual defendant). In fact, the complaint does not make any reference to these individuals after their respective introductions in the complaint's "Parties" section. Accordingly, Ms. LeBeau has not pleaded a viable § 1983 claim against Defendants Raith, Hibberd, Katch, Cummings, or Mattera.

---

*e.g.*, *Beaver v. Del. Cty. Probation & Parole*, No. 15-2784, 2016 WL 4366977, at *1 (E.D. Pa. Aug. 16, 2016) (no mention that 13-day gap between arrest and *Gagnon I* hearing was problematic); *Regelman v. Weber*, No. 10-675, 2012 WL 4498842, at *12 (W.D. Pa. Sept. 28, 2012) (no mention that 11- or 21-day gap between arrest and *Gagnon I* hearing was problematic); *Adam v. Jones*, No. 96-4377, 1999 WL 178365, at *9 (E.D. Pa. Mar. 30, 1999) (*Gagnon I* hearing held "a few weeks" after arrest did not violate due process).

### D. Claims Against GWHCF

At oral argument on the pending motions, Ms. LeBeau's counsel confirmed that Ms. LeBeau did not object to the Prison Defendants' motion to dismiss with respect to GWHCF because GWHCF is not an entity amenable to suit. *See Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4-*5 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2009) (collecting cases holding that correctional facilities, such as GWHCF, are not legal entities amenable to suit). Accordingly, all claims against GWHCF are dismissed with prejudice.

### E. *Monell* Claim Against CEC[5]

Pursuant to *Monell v. City of New York Dep't of Social Servs.*, a plaintiff can sue a municipality for an action or omission by the municipality, or its policymaker, that is the "moving force" behind an alleged constitutional violation. 436 U.S. 658, 694-95 (1978). A plaintiff can sue a private entity pursuant to *Monell* only if the private entity performs municipal functions. *Kanu v. Lindsey*, No. 13-6451, 2016 WL 1086565, at *3 (E.D. Pa. Mar. 21, 2016) (finding CEC subject to *Monell* liability); *Cloyd v. Del. Cty.*, No. 14-4833, 2015 WL 5302736, at *2 (E.D. Pa. Sept. 10, 2015) (same). A plaintiff cannot succeed on a *Monell* claim on the basis of respondeat superior. Rather, a plaintiff must show that the municipality itself was responsible for the alleged constitutional violation. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

---

[5] Ms. LeBeau has also asserted claims against Defendants Cummings and Mattera in their official capacities. Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), Ms. LeBeau's claims against Defendants Cummings and Mattera in their official capacities are dismissed with prejudice as duplicative of Ms. LeBeau's *Monell* claim against CEC. *See Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 638 n.5 (E.D. Pa. 2014) (dismissing official capacity claims against municipal employees where the same claim was brought against the municipality).

A plaintiff can demonstrate municipal responsibility by establishing that "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). Accordingly, a municipality can only be held liable pursuant to § 1983 if a plaintiff's claim is premised upon a municipal policy or custom. *Id.*; *see also McTernan v. City of York, Pa.*, 564 F.3d 636, 657 (3d Cir. 2009). The Third Circuit Court of Appeals has explained:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*McTernan*, 564 F.3d at 658 (quoting *Andrews*, 895 F.2d at 1480). Whether a plaintiff's claim is premised on a municipal policy or a municipal custom, a plaintiff must demonstrate "that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480. In order to state a plausible *Monell* claim, a plaintiff must "specify what exactly that custom or policy was." *Id.* at 658.

The allegations relevant to Ms. LeBeau's *Monell* claim against CEC are as follows:

98. At all times material hereto, Defendants instituted policies and procedures within the George W. Hill Correctional Facility, with indifference to the constitutional rights of the inmates of the George W. Hill Correctional Facility, including, but not limited to Plaintiff.

99. Those policies and procedures include the creation and promotion of an atmosphere where corrections officers ignore the reasonable complaints of inmates concerning overdetention, including Plaintiff, as aforementioned.

Compl. ¶¶ 98-99. Ms. LeBeau's allegations that she "raised repeated complaints" about her illegal detention and that the "Defendants took no action" are the primary factual allegations in support of the alleged unconstitutional policies and procedures. *See* Compl. ¶ 43. These

allegations, however, do not sufficiently state a plausible *Monell* claim, whether based on a municipal policy or a municipal custom.

With regard to a municipal policy or procedure, Ms. LeBeau fails to cite any *specific* policies or procedures; she only generally alleges that CEC maintained "policies and procedures" that resulted in correctional officers ignoring prisoner complaints of overdetention. Without alleging a specific policy or procedure, it is not possible to assess whether or not there is "a direct causal link between the municipal action" and the alleged constitutional violation. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Ms. LeBeau argues her allegation that multiple GWHCF employees ignored her complaints regarding her detention over the course of multiple days suffices to make out an inference of a municipal custom. The Court does not agree. Even taking these facts as true, as the Court must on this motion to dismiss, the Court does not find that Ms. LeBeau has adequately pleaded that CEC had "knowledge of, and acquiesce[d] to" a course of conduct that was sufficiently widespread as to have the force of law. *See Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007).[6]

### F. State Law Claims

#### 1. False Arrest/Imprisonment Claim Against Ms. Montgomery[7]

In order to state a plausible state law claim for false arrest/imprisonment, a plaintiff must allege that an officer (i) intentionally caused his or her arrest knowing that (ii) there was no

---

[6] Whether premised on a municipal policy or custom, Ms. LeBeau's *Monell* claim fails for the independent reason that she failed to allege any act or omission on the part of a municipal policymaker. *See McTernan*, 564 F.3d at 658 ("Equally fatal, the four allegations in the complaint relevant to [plaintiff's] *Monell* claim fail to allege conduct by a municipal decisionmaker."); *Andrews*, 895 F.2d at 1480 (explaining that in order to succeed on a *Monell* claim, a plaintiff must "show that a policymaker is responsible either for the policy or, through acquiescence, for the custom").

probable cause for the arrest. *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 571-72 (E.D. Pa. 2005); *see also Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994). For the reasons discussed above, *see supra* Section III.C.1.a, Ms. LeBeau has pleaded a plausible state law false arrest/imprisonment claim against Ms. Montgomery.

Ms. Montgomery argues that, as a state employee, Pennsylvania's sovereign immunity statute immunizes her from liability for all actions taken within the scope of her employment. Ms. LeBeau responds that Ms. Montgomery is not entitled to the benefit of Pennsylvania's sovereign immunity statute because she was not acting within the scope of her employment when she knowingly caused a bench warrant to be issued for Ms. LeBeau's arrest without probable cause.

Pennsylvania's sovereign immunity statute states, in relevant part:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. § 2310; *see also Foster v. McLaughlin*, 203 F. Supp. 3d 483, 488 (E.D. Pa. 2016).[8] An employee acts within the scope of his or her employment if the conduct at issue (i) "is of the kind he is employed to perform"; (ii) "occurs substantially within the authorized time and space limits"; and (iii) "is actuated, at least in part, by a purpose to serve the master." *Worth & Co., Inc. v. Getzie*, 11 F. Supp. 3d 484, 495 (E.D. Pa. 2014) (quoting the Restatement (Second) of Agency § 228(1), which Pennsylvania has adopted). "Intentional torts that are unprovoked,

---

[7] Ms. LeBeau also asserts state law false arrest and imprisonment claims against Defendants Raith, Hibberd, and Katch. Because Ms. LeBeau has not alleged any actions or inactions by Defendants Raith, Hibberd, or Katch, Ms. LeBeau's state law false arrest and imprisonment claims fail as to those defendants.

[8] Pennsylvania has expressly waived its sovereign immunity only in 9 limited circumstances not relevant to the facts of this case. See 42 Pa.C.S. § 8522(b).

15

unnecessary or unjustified by security concerns or penological goals do not, as a matter of law, fall within the scope of employment." *Minyard v. City of Phila.*, No. 11-246, 2012 WL 3090973, at *6 (E.D. Pa. July 31, 2012) (quotation marks and citation omitted). False arrest and false imprisonment are intentional torts. *Watson v. Witmer*, 183 F. Supp. 3d 607, 616 (M.D. Pa. 2016).

Here, Ms. LeBeau alleges that Ms. Montgomery knowingly caused her arrest without probable cause. Improperly causing the arrest of another does not serve the interests of DCAPP and, accordingly, does not constitute conduct within scope of Ms. Montgomery's employment. *See Johnson*, 2013 WL 4014565, at *6-*7 (determining that purposefully seeking an erroneous warrant places an official's actions outside the scope of his employment); *Perkins v. Staskiewicz*, No. 08-1651, 2009 WL 693176, at *4 (M.D. Pa. Mar. 13, 2009) (determining that an officer who knowingly makes an arrest without probable cause acts outside the scope of his employment). Accordingly, Ms. Montgomery is not immune from Ms. LeBeau's state law claims.

2. False Imprisonment Claim Against CEC[9]

In order to state a claim for false imprisonment under Pennsylvania law, a plaintiff must allege (i) he or she was detained and that (ii) such detention was unlawful. *Renk*, 641 A.2d at 293. Defendants argue that Ms. LeBeau's detention was not unlawful because CEC acted in accordance with a valid bench warrant. Ms. LeBeau responds that her detention was unlawful because the bench warrant only authorized her detention for 72 hours, and she was detained for 8 days. Even taking all of Ms. LeBeau's allegations as true, Ms. LeBeau has failed to plead a viable state law false imprisonment claim against CEC.

---

[9] Ms. LeBeau also asserts a state law false imprisonment claim against Defendants Cummings and Mattera. Because Ms. LeBeau has not alleged any actions or inactions by Defendants Cummings or Mattera, Ms. LeBeau's state law false imprisonment claim fails as to those defendants.

16

In the context of an alleged overdetention, a prison will be liable for the tort of false imprisonment if the prison unreasonably delayed a prisoner's release. *Regan*, 2009 WL 650384, at *12 (citing *Burgess v. Roth*, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975)). In *Burgess*, the plaintiff's release from prison was delayed by 6 days as a result of the defendants' policy to hand-deliver release orders to correctional institutions. *Burgess*, 387 F. Supp. at 1158-60. In granting the defendants' summary judgment motion, the court found that the 6-day delay was not unreasonable under the circumstances because the defendants "promptly set the release machinery in motion" following the release decision. *Id.* at 1161. There was also no evidence put forth of intentional or negligent conduct contributing to the delay. *Id.*

In *Regan*, an inmate's release was delayed by 5 days as a result of an error in the inmate's release paperwork. *Regan*, 2009 WL 650384, at *10-*11. The defendants failed to resolve the discrepancy in the window of time between when they learned of the error and when the district court closed for the Christmas holiday. *Id.* at *12. This window of time was only several hours long. *Id.* The eventual 5-day delay was a result of the defendants' inability to contact the district court over the remainder of the Christmas holiday. *Id.* The court found that there was no unreasonable delay under the circumstances because the defendants acted as soon as the district court re-opened after the holiday weekend. *Id.*

There are two key factors distinguishing this case from *Regan* and *Burgess*. First, and working in Ms. LeBeau's favor, is the fact that she has alleged that prison personnel intentionally and/or negligently ignored her complaints regarding her illegal detention. Conversely, in both *Burgess* and *Regan*, the defendants acted promptly to effectuate the plaintiffs' release. Second, and working in CEC's favor, is that *Burgess* and *Regan* each involved a delay beyond a court-ordered release date. Here, there is no allegation that a court ordered Ms. LeBeau's release.

17

There is only an allegation that, at some unspecified time prior to Ms. LeBeau's arrest, a bench warrant was issued that allegedly authorized Ms. LeBeau's detention for only 72 hours.

There is a "stated legal requirement that binds CEC to release prisoners only on official written discharge orders." *Evans v. Community Education Centers, Inc.*, No. 13-1642, 2015 WL 5334237, at *3 (E.D. Pa. Sept. 11, 2015); *see also id.* at *2 ("[O]nly a court has authority to release individuals from prison . . . ."). Ms. LeBeau has presented no case law or statutory authority to support the proposition that CEC had the legal authority to release Ms. LeBeau after she had been detained for 72 hours. Therefore, Ms. LeBeau has not sufficiently pleaded that her detention was unlawful, which is fatal to her state law false imprisonment claim against CEC.

### 3. Negligence Claim Against CEC[10]

To state a negligence claim under Pennsylvania law, a plaintiff must allege that (i) the defendants owed the plaintiff a duty of care, (ii) the defendants breached that duty, (iii) the breach was causally connected to the alleged injury, and (iv) the plaintiff suffered an actual loss. *Krentz v. Consolidated Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006). The parties dispute whether CEC owed Ms. LeBeau a duty under Pennsylvania law to investigate her complaints of illegal detention.

There is little authority within the Third Circuit or under Pennsylvania law describing the duty owed by prisons to investigate inmates' complaints of illegal detention. *See, e.g.*, *Regan*, 2009 WL 650384, at *10 ("We are aware of no authority in the Third Circuit or under Pennsylvania law that establishes the contours of the duty of care that a Pennsylvania jailer must exercise to effect a prisoner's release."). CEC brought to the Court's attention one unpublished opinion of the Pennsylvania Superior Court, *Haley v. GEO Group, Inc.*, No. 968 EDA 2010 (Pa.

---

[10] Ms. LeBeau also asserts a state law negligence claim against Defendants Cummings and Mattera. Because Ms. LeBeau has not alleged any actions or inactions by Defendants Cummings or Mattera, Ms. LeBeau's state law negligence claim fails as to those defendants.

18

Super. Ct. Dec. 8, 2010) (non-precedential), that suggests Pennsylvania law does not impose a duty on prisons to investigate prisoner complaints of illegal detention when there is no existing court order mandating the prisoner's release. *See* Prison Defendants' Mot. to Dismiss, Ex. A (Doc. No. 12).

In *Haley*, the plaintiff was arrested in Pennsylvania on an outstanding out-of-state bench warrant issued 9 years prior and detained at GWHCF. *Id.* at 2. Prior to his arrest, however, the plaintiff had arranged with the out-of-state authorities to voluntarily appear at a court hearing. Accordingly, plaintiff was not actually a fugitive at the time of his arrest. Because of a breakdown in communication between the out-of-state authorities, the local authorities, and GWHCF, the plaintiff was unnecessarily detained for nearly a month despite the plaintiff's repeated complaints to prison employees that his incarceration was improper. *Id.* at 2-4. The superior court affirmed the lower court's grant of summary judgment to the private entity then operating GWHCF on the plaintiff's claim that the prison was negligent. *Id.* at 10-11. The superior court specifically rejected the argument that the prison "had an affirmative legal duty to contact the . . . District Attorney . . . to determine whether [the plaintiff] was properly being held." *Id.* at 6. Rather, the court reasoned, when a prisoner is detained pursuant to a court order, such as the bench warrant here, a prison has no affirmative duty to investigate the validity of the underlying arrest and detention. *Id.* at 10.

Ms. LeBeau, while not specifically responding to CEC's argument that it had no duty to investigate the validity of the bench warrant, appears to rest her claim on the fact that CEC was under a duty to release Ms. LeBeau after the expiration of the "72 hour bench warrant." As discussed above, Ms. LeBeau has not presented the Court with any case law or statutory authority to support a finding that CEC was under a legal obligation to release Ms. LeBeau after

19

72 hours without further direction from the judicial system or under a legal duty to investigate Ms. LeBeau's complaints. Accordingly, Ms. LeBeau has not pleaded a plausible claim for negligence against CEC.

    4. Intentional Infliction of Emotional Distress Claim Against the Prison Defendants_____

Success on a claim for intentional infliction of emotional distress under Pennsylvania law requires a plaintiff to demonstrate that the defendant engaged in conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ." *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting *Field v. Phila. Elec. Co.*, 856 A.2d 1170, 1184 (Pa. 1989)). Because the Court has already determined that the factual allegations contained in the complaint are insufficient to support the federal or state law causes of action asserted against the Prison Defendants, the Court likewise concludes that Ms. LeBeau's allegations do not plausibly support a claim for intentional infliction of emotional distress against the Prison Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Probation Defendants' Motion to Dismiss is granted in part and denied in part and the Prison Defendants' Motion to Dismiss is granted.

    \*    \*    \*

An appropriate order consistent with this Memorandum follows.

    BY THE COURT:

    S/Gene E.K. Pratter
    GENE E.K. PRATTER
    UNITED STATES DISTRICT JUDGE