**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| MAUREEN LEBEAU, | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LEANNE MONTGOMERY et al., | : | No. 17-38 |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                    NOVEMBER 28, 2017

### INTRODUCTION

Maureen LaBeau, on probation for a DUI conviction, had two ways to comply with the terms of her probation: (1) complete a drug evaluation and fax a certificate of completion to her probation officer, or (2) attend an upcoming probation hearing in person. She claims to have chosen option 1. But her probation officer, Leanne Montgomery, claims never to have received the fax, such that Ms. LaBeau's subsequent failure to attend the hearing triggered a warrant for her arrest.

Months later, Ms. LaBeau was pulled over for an unrelated traffic violation and arrested based on the warrant. She spent eight days in prison complaining to prison officials that she did not know why she was there. She eventually reached Ms. Montgomery and was released.

Ms. LaBeau brought this suit against members of the probation office and officials at the prison. She alleges violations of the Fourth, Eighth, and Fourteenth Amendments, as well as state-law claims for false arrest, false imprisonment, and negligence.

Now, Ms. Montgomery has moved for summary judgment, and the prison officials have moved to dismiss. First, because a genuine issue of material fact exists as to whether Ms.

Montgomery received the fax from Ms. LaBeau, the Court denies summary judgment as to the false arrest and false imprisonment claims against Ms. Montgomery but grants summary judgment as to the other claims. Second, because Pennsylvania law does not impose a duty on prisons to investigate prisoner complaints of illegal detention without an existing court order mandating the prisoner's release, the Court grants the prison officials' motions to dismiss.

**FACTS**

The facts of this case fall into two phases, which the Court will call the probation phase and the prison phase. The facts of the probation phase give rise to Ms. Montgomery's motion for summary judgment. The facts of the prison phase underlie the two motions to dismiss.

## I.    Probation Phase

The probation phase started in 2013 with Ms. LaBeau's conviction for DUI. After her conviction, she agreed to complete a drug and alcohol evaluation as part of her probation.

She completed the evaluation in March 2014. She alleges that she faxed a certificate of completion to her probation officer, Ms. Montgomery. Proof that Ms. LaBeau had completed the evaluation would have excused Ms. LaBeau from an upcoming probation hearing. But Ms. Montgomery claims that she never received the fax. As a result, Ms. Montgomery expected Ms. LaBeau to appear at the upcoming probation hearing. When Ms. LaBeau failed to appear, the probation office issued a bench warrant for her arrest and a 72-hour hold.

## II.    Prison Phase

On January 15, 2015, Ms. LaBeau was pulled over for running a stop sign. Learning that there was an outstanding bench warrant for her arrest, the officer arrested Ms. LaBeau. She was sent to the George W. Hill Correctional Facility, operated by defendant Community Education Centers, Inc.

The bench warrant was for a 72-hour hold, but Ms. LaBeau ultimately spent eight days at the prison. During that time, she repeatedly complained to defendants Helen Borrell, Michael Moore, and Shena Cummings (all prison employees) that she did not know why she was there. She alleges that the defendants refused her requests for a phone call and her requests to appear before a judge. Eventually, Ms. Borrell helped Ms. LaBeau reach Ms. Montgomery, who had Ms. LaBeau resend the fax of the completed drug evaluation. Once Ms. Montgomery received the fax, she authorized Ms. LaBeau's release.

## PROCEDURAL HISTORY

In January 2017, Ms. LaBeau brought a collection of civil rights claims and related state-law claims against two groups of defendants: the probation defendants (those involved in issuing the bench warrant during the probation phase, including Ms. Montgomery) and the prison defendants (those involved in detaining Ms. LaBeau for eight days during the prison phase).

After an initial round of motions to dismiss, this Court issued an opinion and order dismissing counts against all defendants except Ms. Montgomery. *See LeBeau v. Raith*, No. 17-cv-38, 2017 WL 2264639 (E.D. Pa. May 24, 2017).[1] On June 12, 2017, Ms. LaBeau filed an amended complaint, alleging facts with more specificity against certain prison defendants.

Only one probation defendant was named in the amended complaint: the probation officer, Ms. Montgomery. Against Ms. Montgomery, Ms. LaBeau alleges:

1. Overdetention, in violation of the Eighth Amendment (count I);

2. False imprisonment, in violation of the Fourth Amendment (count II);

3. False arrest under both the Fourth Amendment and Pennsylvania law (count III);

---

[1]     A note on names: The parties refer to Ms. LaBeau as both "LeBeau" and "LaBeau." They refer to Ms. Montgomery as both "Lee Anne" and "Leanne." Going forward, the Court will refer to Maureen LaBeau and Leanne Montgomery.

4.  False imprisonment under Pennsylvania law (count IV); and

5.  Violations of her Fourteenth Amendment right to due process (count V).

Ms. Montgomery has filed a motion for summary judgment.

Four prison defendants were named in the amended complaint. Of those four, Ms. Cummings and Community Education Centers were named in the original complaint, and Ms. Borrell and Mr. Moore were named for the first time in the amended complaint. Against the prison defendants, Ms. LaBeau alleges:

1.  Overdetention, in violation of the Eighth Amendment (count I);

2.  False imprisonment under Pennsylvania law (count IV);

3.  Violations of her Fourteenth Amendment right to due process (count V); and

4.  Negligence (count VI).

The prison defendants have filed two motions to dismiss. The Court held oral argument on all of the motions.

DISCUSSION

The Court first analyzes the motion for summary judgment of Ms. Montgomery, the sole remaining probation defendant, and grants the motion as to all but the state and § 1983 false arrest and false imprisonment claims. Next, the Court evaluates the Prison Defendants' motions to dismiss, including a timeliness issue raised by the newly named prison defendants, and grants both motions to dismiss.

**I.  Ms. Montgomery's Motion for Summary Judgment**

Ms. Montgomery has moved for summary judgment as to each of the five counts against her. After summarizing the standard of review, this section takes up her arguments as to the alleged false arrest and false imprisonment (counts II-IV). The Court denies summary judgment

as to these counts because there is a genuine issue of material fact as to whether Ms. Montgomery received a fax containing Ms. LaBeau's drug evaluation. Next, the Court addresses count I (overdetention) and count V (due process) and grants summary judgment as to both. Finally, the Court rejects Ms. Montgomery's arguments for qualified immunity, quasi-judicial immunity, and sovereign immunity.

### A. Standard of Review on a Motion for Summary Judgment

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the

initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. False Arrest and False Imprisonment Claims (Counts II, III, and IV)

To succeed on her false arrest and false imprisonment claims under both § 1983 and state law, Ms. LaBeau must show that the arrest and imprisonment were effectuated without probable cause. *See Johnson v. Knorr*, 477 F.3d 75, 84–85 (3d Cir. 2007) (claims under § 1983); *Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008) (claims under state law). Probation Officer Montgomery would have had probable cause to request the bench warrant if she never received Ms. LaBeau's fax indicating that she had completed drug treatment.

Thus, these counts turn on whether Ms. Montgomery ever received a fax from Ms. LaBeau indicating that Ms. LaBeau had completed drug treatment. More precisely, their success at the summary judgment stage hinges on whether there is a genuine issue of fact as to whether Ms. Montgomery received the fax.

#### 1. Facts of the Fax

Ms. LaBeau's pre-fax behavior is consistent with sending a fax. She told Ms. Montgomery that she was taking the drug evaluation. Montgomery Depo. 65:16-24; 66:1-3. She

completed the evaluation.  LaBeau Depo. 33:22-24.  She told Ms. Montgomery that she would fax the certification.  *Id.* 33:4-20.

Ms. LaBeau alleges that she sent the fax from her office at Planned Parenthood.  The fax machine was set up to print a notification only if the fax failed to send.  Thus, Ms. LaBeau has no fax confirmation.  Nor does she know the fax number to which she sent the fax.  *Id.* 37:6-19; 38:7-12.  She concedes that she does not know whether Ms. Montgomery ever received the fax. *Id.* 84:6-11.

For her part, Ms. Montgomery contends that she never received the fax.  Thus, she expected Ms. LaBeau to appear at a hearing the following day.  Once Ms. LaBeau failed to appear, probable cause existed for a bench warrant for a 72-hour hold.

Just as Ms. LaBeau's pre-fax behavior is *consistent* with sending a fax, Ms. Montgomery's post-arrest behavior is *inconsistent* with the allegation that she willfully disregarded or maliciously refused to record the fax.  Once Ms. Montgomery learned that Ms. LaBeau had been arrested, she acted promptly to obtain a copy of the drug treatment completion form and arranged for the release of Ms. LaBeau from prison.  Montgomery Depo. 80:14-24.

Ms. Montgomery argues that no genuine issue of material fact exists as to whether she received the fax.  She says she never received it, and the most Ms. LaBeau can say is that she sent it.

### 2.  Conclusion

A jury should decide whether to credit Ms. Montgomery's testimony that she never received the fax.  In *Lupyan v. Corinthian Colleges*, 761 F.3d 314 (3d Cir. 2014), the court held that, in a dispute over whether a letter from an employer ever reached an employee, receipt was an issue of fact for the jury, which should decide the employee's credibility.  *Id.* at 321; *see also*

*Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 190 (3d Cir. 2011) (holding, in the context of the Truth in Lending Act, that the testimony of a borrower alone is sufficient to overcome the presumption that the borrower received notice of her right to cancel her mortgage).

As explained above, there is circumstantial evidence both ways. Ms. LaBeau's behavior around the fax (attending treatment, not attending the hearing) is consistent with having sent the fax; Ms. Montgomery's behavior during Ms. LaBeau's imprisonment (securing a warrant but acting promptly to release Ms. LaBeau after learning about Ms. LaBeau's imprisonment) is consistent with never having received a fax.

Of course, one can believe that Ms. LaBeau sent a fax and *also* that Ms. Montgomery never received it (for example, because of a computer glitch, or Ms. LaBeau having the wrong fax number). Or, one can believe that Ms. Montgomery *did* receive the fax but carelessly forgot about it — not the willful or malicious disregard that Ms. LaBeau alleges. Still, at this stage, the Court must draw all reasonable inferences in favor of Ms. LaBeau. The Court therefore denies summary judgment as to these counts.

### C. *Overdetention and Due Process Claims (Counts I and V)*

This Court's previous opinion already dismissed the overdetention claim against Ms. Montgomery. *See LeBeau v. Raith*, No. 17-cv-38, 2017 WL 2264639, at *5 (E.D. Pa. May 24, 2017) ("Ms. LeBeau was detained based on a probation violation. There is no allegation in the complaint that any defendant detained Ms. LeBeau for a period of time beyond a court-sanctioned release date. . . . Accordingly, Ms. LeBeau has not pleaded a viable Eighth Amendment claim against Ms. Montgomery."). Similarly, the opinion dismissed the due process claim against Ms. Montgomery. *See id.* ("The complaint contains no allegations connecting Ms. Montgomery to Ms. LeBeau's detention beyond 72 hours . . . . Without an allegation that Ms.

Montgomery was personally involved in Ms. LeBeau's alleged overdetention, Ms. LeBeau's procedural due process claim against Ms. Montgomery must fail.").

No new facts appear in amended complaint. It is undisputed that Ms. Montgomery did not know that Ms. LaBeau was in prison until January 22 and acted promptly to remove her from prison. Montgomery Depo. 80:14-24. At oral argument, counsel for Ms. LaBeau conceded that these two counts are more appropriately directed at the prison defendants. Therefore, as to these counts, the Court grants summary judgment for Ms. Montgomery.

### D. Ms. Montgomery is Not Immune from Suit

Ms. Montgomery argues that she is shielded by (1) qualified immunity, (2) quasi-judicial immunity, and (3) sovereign immunity. The Court rejects these arguments.

#### 1. Qualified Immunity as to the § 1983 Claims

Ms. Montgomery argues that qualified immunity shields her from the § 1983 claims. But the Court's opinion in May already addressed this issue: "Ms. LeBeau's right to be free from a government official causing her arrest and detention without probable cause was clearly established at the time in question." *LeBeau*, 2017 WL 2264639, at *4. Therefore, Ms. Montgomery does not have qualified immunity in this case.

#### 2. Quasi-Judicial Immunity from State Claims

Arguing that county probation officers are officers of the court, Ms. Montgomery claims quasi-judicial immunity for her actions.

Ms. LaBeau counters that probation officers are officers of the court only when they are engaged in "adjudicatory duties," such as hearing evidence or recommending whether to parole a prisoner. *See McBride v. Cahoone*, 820 F. Supp. 2d 623, 637–38 (E.D. Pa. 2011). Indeed, this

Court has squarely held that "ask[ing] for a bench warrant after [a probationer] fail[s] to show up" for a hearing is a nondiscretionary (and therefore non-adjudicative) function. *Id.*

At oral argument, counsel for Ms. Montgomery conceded that Ms. Montgomery's actions in this case were nondiscretionary. Ms. LaBeau's position is therefore compelled by precedent. Ms. Montgomery cannot claim quasi-judicial immunity in this instance.

### 3. *Sovereign Immunity from State Claims*

Pennsylvania law grants immunity to state employees acting within the scope of their employment. *See* 1 Pa. C.S. § 2310 (granting immunity to state employees "acting within the scope of their duties"). Intentional torts are outside the scope of employment. Here, Ms. Montgomery argues, there is no evidence that she "acted outside the scope of her employment or for other than penological goals of her judicial employer."

Ms. Montgomery's professed lack of intentionality speaks not only to sovereign immunity, but also to the very question whether she committed the intentional tort of false imprisonment in the first place. Either Ms. Montgomery committed an intentional tort (meaning that she cannot benefit from sovereign immunity because she has acted outside the scope of her employment) or she acted, at worst, carelessly (meaning that she cannot be liable for false arrest and imprisonment anyway). Because the Court concludes, above, that a reasonable jury *could* find that Ms. Montgomery committed the intentional tort of false imprisonment, sovereign immunity does not provide her with any shelter at this stage.

## II.  Prison Defendants' Motions to Dismiss

After summarizing the standard of review on a motion to dismiss, the Court dismisses all counts against the individual prison defendants. Pennsylvania law does not impose a duty on prison officials to investigate prisoner complaints of illegal detention without an existing court

order mandating the prisoner's release. Next, the Court dismisses the *Monell* claim against the prison. Finally, the Court addresses a timeliness argument raised by the two newly named prison defendants and concludes that claims against these defendants are time-barred.

### A. *Standard of Review on a Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an

amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## B. *Counts Hinging on a Duty to Investigate (Counts I, IV, V, and VI)*

Ms. LaBeau was held in prison pursuant to a facially valid bench warrant. All of the prison defendants reviewed the facially valid warrant, which provided for a 72-hour hold. After 72 hours, the defendants did not take Ms. LaBeau before a judge — despite her complaints that she was being wrongfully held. Did they have a duty to do so? What legal duties, if any, are triggered after a 72-hour hold expires?

All of the counts (Eighth Amendment, Fourteenth Amendment, and state tort law) against the prison defendants revolve around these questions. As explained below, the Court will dismiss all counts against the prison defendants because they had no duty to investigate prisoner complaints of illegal detention without an existing court order mandating the prisoner's release.

### 1. *Eighth Amendment Overdetention Claim (Count 1)*

There are three elements to a § 1983 claim for overdetention in violation of the Eighth Amendment:

1. A prison official knew of the prisoner's problem and therefore of the risk of overdetention;

2. The official failed to act or acted ineffectually, indicating that the official's response was a product of deliberate indifference to prisoner's plight; and

3. The official's deliberate indifference caused the unjustified detention.

*Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989).

As to the first element, notice, a prisoner's uncorroborated assertion that his sentence was calculated in error is not enough to put prison officials on notice. *See Askew v. Kelchner*, No 04-cv-631, 2007 WL 763075, at *6 (M.D. Pa. Mar. 7, 2007). Otherwise, "any passing complaint by

an inmate" would "put a prison guard 'on notice' of a constitutional violation." *Chappelle v. Verano*, No. 11-cv-304, 2013 WL 5876173, at *5 (M.D. Pa. Oct. 30, 2013).

As to the second element, deliberate indifference, "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." *Sample*, 885 F.2d at 1110. The crux of the deliberate indifference inquiry is whether the prison official had a duty to investigate sentencing problems, not whether the defendant had the primary ability to resolve the problem. *Id.* at 1112. In *Sample*, the Third Circuit Court of Appeals held that a prison's records supervisor, who had the authority to release inmates whose time had expired, exhibited deliberate indifference.

The prison defendants here argue that they cannot be liable for overdetention because they held Ms. LaBeau pursuant to a facially valid bench warrant that was never rescinded. Indeed, they contend that not only did they not have a directive to release Ms. LaBeau, but rather they had no legal authority to release her. As additional support, they point to this Court's earlier opinion in this case dismissing most of the original complaint on similar grounds:

> [T]here is no allegation that a court ordered Ms. LaBeau's release. There is only an allegation that, at some unspecified time prior to Ms. LaBeau's arrest, a bench warrant was issued that allegedly authorized Ms. LaBeau's detention for only 72 hours. . . . Ms. LeBeau has presented no case law or statutory authority to support the proposition that CEC had the legal authority to release Ms. LeBeau after she had been detained for 72 hours. Therefore, Ms. LeBeau has not sufficiently pleaded that her detention was unlawful.

*LeBeau v. Raith*, No. 17-cv-38, 2017 WL 2264639, at *9 (E.D. Pa. May 24, 2017).

Ms. LaBeau counters that the Prison Defendants misrepresent her allegations. She does not fault the prison for failing to release her on its own. Her allegation is that the prison employees refused to let her speak to a judge who could have ordered her released. Even if the

warrant was facially valid, it was only for a 72-hour hold. After that time, according to Ms. LaBeau, the prison employees should have taken some action, rather than stonewall Ms. LaBeau for five more days.

The question boils down to whether the prison officials had a legal duty to investigate Ms. LaBeau's claims that something was wrong with her facially valid bench warrant. After her 72-hour hold had passed, it may seem reasonable that the prison officials should have done something. But under Pennsylvania law, they appear to have no such duty. *See Haley v. GEO Group, Inc.*, No. 968 EDA 2010 (Pa. Super. Ct. Dec. 8, 2010). As this Court previously explained:

> There is little authority within the Third Circuit or under Pennsylvania law describing the duty owed by prisons to investigate inmates' complaints of illegal detention. *See, e.g.*, *Regan*, 2009 WL 650384, at *10 ("We are aware of no authority in the Third Circuit or under Pennsylvania law that establishes the contours of the duty of care that a Pennsylvania jailer must exercise to effect a prisoner's release."). CEC brought to the Court's attention one unpublished opinion of the Pennsylvania Superior Court, *Haley v. GEO Group, Inc.*, No. 968 EDA 2010 (Pa. Super. Ct. Dec. 8, 2010) (non-precedential), that suggests Pennsylvania law does not impose a duty on prisons to investigate prisoner complaints of illegal detention when there is no existing court order mandating the prisoner's release.

*LeBeau*, 2017 WL 2264639, at *10. At oral argument, counsel for Ms. LaBeau argued that the "deliberate indifference" case law provided the source of a legal duty to present Ms. LaBeau before a judge within 72 hours. But that position ignores that liability based on "deliberate indifference" requires a preexisting duty, given that "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." *Sample*, 885 F.2d at 1110.

### 2. *Fourteenth Amendment Due Process Claim (Count V)*

In support of their motion to dismiss the count alleging due process violations, the prison defendants cite *Duffy v. County of Bucks*, 7 F. Supp. 2d 569 (E.D. Pa. 1998). There, the court held that officials who detain an individual pursuant to a valid warrant do not violate substantive due process, even if the individual says the warrant is invalid. The court explained that officials have no duty to "eliminate the possibility of convicting an innocent person." *Id.* at 577.

Here, the defendants argue that they had no authority to release Ms. LaBeau; only a court could have done that. A hearing would have been scheduled on Ms. LaBeau's warrant, and there is no allegation that the prison defendants interfered with the scheduling. In the meantime, the bench warrant was facially valid, so the prison had to hold her.

In addition, the defendants argue that that they had no obligation to release Ms. LaBeau after 72 hours. Detention for eight days without a hearing before a judge is not a due process violation. *LeBeau*, 2017 WL 2264639, at *5. A court, not the prison, schedules the hearing.

Ms. LaBeau counters, once again, that it is no defense to say that the bench warrant was facially valid. She contends that the bench warrant became facially *invalid* after 72 hours. However, even if that contention was efficacious, it does not follow that the warrant then becomes a get-out-jail-free card.

This issue also boils down to whether the defendants had a duty to investigate Ms. LaBeau's claims that something was wrong with her facially valid bench warrant. At oral argument, counsel for Ms. LaBeau argued that the prison defendants should have acted because Ms. LaBeau was outspoken that her detention was unlawful. But complaining loudly about being in prison cannot be a trigger of an official's duty. Because the defendants had no known duty to investigate Ms. LaBeau's claims, this count is dismissed.

### 3. State Law False Imprisonment Claims (Count IV)

Under Pennsylvania law, a plaintiff bringing a false imprisonment claim based on being detained in prison must show that his detention was unlawful. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). The prison defendants argue that Ms. LaBeau's detention was lawful because it was pursuant to a facially valid bench warrant. In other words (albeit words that have often rung quite hollow), the defendants contend that they were simply following orders.

Ms. LaBeau counters, once again, that it is no defense to say that the bench warrant was facially valid. She contends that the bench warrant became facially *invalid* after 72 hours.

As addressed immediately above, this issue too turns on whether Ms. LaBeau's detention was still lawful for the last five days she was in prison (that is, after the 72-hour hold had expired). Again, because it does not appear that these prison employees have an affirmative duty to investigate prisoners' claims of overdetention (or, in this case, unlawful detention), this count is dismissed.[2]

### C. Monell *Claim Against CEC*

The amended complaint does not explicitly articulate a *Monell* claim against Community Education Centers, but the parties have briefed whether such a claim would survive the motion to dismiss. As an initial matter, CEC could be liable only under a *Monell* claim. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (an entity cannot be liable for constitutional violations directed at individuals).

---

[2]  The same reasoning applies to the negligence count (count VI) against the prison defendants. If they had no duty to investigate claims of overdetention, even after 72 hours, then the claim of negligence fails.

Ms. LaBeau contends that her situation is the product not of "one rogue actor," but of a custom at CEC. CEC, on the other hand, argues that Ms. LaBeau has not brought allegations concerning its policies or customs to make out a *Monell* claim.

The Court agrees with CEC. Any *Monell* claim is foreclosed by the Court's opinion regarding the initial complaint. There, the Court dismissed the *Monell* claim because Ms. LaBeau had not cited a specific policy or procedure, nor had she alleged that CEC knew and acquiesced to any employee custom. *LeBeau*, 2017 WL 2264639, at *7. Because nothing has changed since the first complaint, the Court dismisses all counts against CEC.

### D. Timeliness of Complaint as to Prison Defendants Borrell and Moore

Ms. LaBeau named Ms. Borrell and Mr. Moore as defendants for the first time in her amended complaint, which was filed over two years after her imprisonment. "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *see also Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. 1999) ("[F]or purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined.").

Ms. Borrell and Mr. Moore argue that the complaint against them is time-barred. Ms. LaBeau counters that the amended complaint relates back to the original (timely filed) complaint. Because the Court concludes that Ms. Borrell and Mr. Moore had no notice of the original suit, the complaint against them is time-barred.

#### 1. Relation Back – Rule

In this case, the following elements must be met for a pleading to relate back to a prior pleading:

1. The claim in the amended pleading arose out of the conduct set forth in the original pleading;

2. Within 90 days of the original pleading, the parties to be added had notice of the suit and would not be prejudiced in maintaining a defense; and

3. Within 90 days of the original pleading, the parties to be added knew or should have known that, but for a mistake about their identities, they would have been added originally.

*Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003); *see also* Fed. R. Civ. P. 4(m) (90 day window for serving summons and complaint); Fed. R. Civ. P. 15(c)(1)(C) (setting out this rule). The parties agree that the first element is satisfied. As to the second and third elements, the new defendants were joined over 90 days after the original complaint. Thus, for the amended complaint to relate back, Ms. Borrell and Mr. Moore (1) must have had constructive notice of the suit within the 90-day window, and (2) should have known, within the 90 day window, that they were left off the original complaint only because of a mistake as to their identities.

### 2. *Element Two – Notice*

The second element speaks both of notice and of the risk of prejudice in maintaining a defense. The two are "closely intertwined": If newly named defendants "received no notice, then it would appear unlikely that such non-notice was sufficient to allay the prejudice." *Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 194 n.3 (3d Cir. 2001). A party has "notice" when he "has some reason to expect his potential involvement as a defendant" or "hears of the commencement of litigation through some informal means." *Id.* at 195. Ms. Borrell and Mr. Moore argue that they had no notice of the original suit. They are not supervisors at the prison and therefore have no access to the legal materials served on others (Ms. Borrell is a case manager and Mr. Moore is a classification coordinator).

Ms. LaBeau seeks to prove constructive notice under two methods available in the Third Circuit. Under the "Shared Attorney" method, "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* at 196. Because Ms. Borrell and Mr. Moore have the same attorney as the original prison defendants, Ms. LaBeau argues, they had notice of Ms. LaBeau's lawsuit.

Alternatively, under the "Identity of Interests" method, two parties may be "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1499, at 146 (2d ed. 1990)). *Singletary* held that a non-manager employee did not share an identity of interests with his employer. Ms. LaBeau argues that because Ms. Cummings (an originally named defendant), Ms. Borrell, and Mr. Moore are all non-managers, they share an identity of interest, meaning that Ms. Borrell and Mr. Moore had notice.

Ms. LaBeau's "Identity of Interests" method stretches *Singletary* too far. It cannot be the case that all non-manager employees in a prison have such identical interests that a suit against one is notice of a suit against all. Nor is it fair to assume that two employees in the same role — say, two guards — have notice of all suits against each other.

The "Shared Attorney" argument is a closer call. Although all prison defendants in this case have the same attorney *now*, that was not the case before Ms. Borrell and Mr. Moore were added in the amended complaint. At the time of the original complaint, the attorney who would eventually represent Ms. Borrell and Mr. Moore did not know that they would be added, such that he did not have a reason to alert them of the suit.

*3. Element Three – Mistaken Identity*

Even if the Court concludes that Ms. Borrell and Mr. Moore had notice, Ms. LaBeau must also show that they should have known that, but for a mistake about their identities, they would have been added originally.

Ms. Borrell and Mr. Moore state, without elaboration, that this is not a case of mistakenly identified defendants.

In response, Ms. LaBeau cites *Varlack v. SWC Caribbean*, 550 F.2d 171 (3d Cir. 1977), for the proposition that the amendment of a "John Doe" complaint satisfies the "but for a mistake" requirement.[3]   In other words, a plaintiff's "lack of knowledge" of a particular defendant's identity can be a "mistake."  *Singletary*, 266 F.3d at 201.  That precedent dictates the result here: the "John Doe" complaint shows that Ms. LaBeau made a mistake as to the identities of Ms. Borrell and Mr. Moore.

Still, because Ms. Borrell and Mr. Moore had no notice of the original suit (under element two, above), the amended complaint is time-barred as to them.

---

[3]    At least seven other circuit courts of appeals have come out against this holding.  *See Singletary*, 266 F.3d at 202.

## CONCLUSION

For the foregoing reasons, the Court grants Leanne Montgomery's motion for summary judgment as to all but the § 1983 false arrest and false imprisonment claims and grants the motions to dismiss of the prison defendants.

An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE